UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JIMMY BRIGGS, | * | |
| | * | |
| PLAINTIFF | * | CIVIL ACTION NO. 17-3083 |
| | * | |
| VERSUS | * | |
| | * | JUDGE ELDON E. FALLON |
| BP EXPLORATION & PRODUCTION, INC., | * | |
| ET AL, | * | MAG JUDGE |
| | * | JANIS VAN MEERVELD |
| DEFENDANTS. | * | |
| | * | SECTION "L"(1) |

**ORDER AND REASONS**

The Court has before it three motions: One from Plaintiff seeking penalties for alleged spoliation of evidence, R. Doc. 76, and two from Defendants seeking exclusion of Plaintiff's proffered expert causation report and summary judgment. R Doc. 79; 80. Having considered the parties' memoranda and exhibits and the applicable law, the Court rules as follows.

I. BACKGROUND

This case arises out of the Deepwater Horizon oil spill that occurred on April 20, 2010. It is one of the "B3" cases, which were originally part of a multidistrict litigation ("MDL") pending in another section of this Court. When that Court approved a class action settlement agreement for many cases in the MDL, the B3 plaintiffs either opted out of the settlement or were excluded from the class definition. Accordingly, this case and others were severed from the MDL and reallotted to other sections of this Court. The B3 plaintiffs all make claims for personal injury and/or wrongful death due to exposure to oil and/or other chemicals used during the oil spill response.

The Plaintiff in this matter, Briggs, did not work in the Deepwater Horizon oil spill response, but alleges that he lived in Long Beach, Mississippi, and suffered exposure as a nearby resident. Briggs alleges that exposure to crude oil and/or chemical dispersants caused him to develop a multitude of adverse medical conditions, including respiratory issues (bronchitis), otolaryngological issues (chronic sinusitis, acute and chronic rhinitis, rhinosinusitis, pharyngitis), cardiovascular issues (hypertension, hyperlipidemia, anemia), osteoarthritis, and neurological conditions (chronic headaches, depression, anxiety, insomnia). R. Doc. 79-3.

## II. INSTANT MOTIONS

Three interrelated motions are pending before the Court in this matter. To begin with, Defendants seek exclusion of the general causation opinions of Plaintiff's expert, Dr. Jerald Cook, arguing that these opinions fail to satisfy the reliability requirements in *Daubert*, *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), or the Fifth Circuit's requirements for admissible causation testimony. R. Doc. 79. Plaintiff opposes, R. Doc. 84, but also moves this Court to sanction Defendants for alleged spoliation of evidence by admitting Cook's causation opinions regardless of its deficiencies. R. Doc. 76. Finally, Defendants move for summary judgment, arguing that if this Court grants their *Daubert* motion and excludes Cook's causation opinions, Plaintiff can put forth no evidence showing causation between his alleged ailments and alleged exposure to chemicals as a result of the oil spill. Accordingly, this Court must first determine whether Plaintiff has successfully shown that Defendants spoliated evidence and, if so, whether an appropriate sanction for such spoliation is the admission of Cook's causation opinions. If not, this Court must determine whether Cook's causation opinions are excludable under *Daubert*. Finally, should this Court rule to exclude Cook's report, this Court

must determine whether Defendants have carried their burden to show that summary judgment is appropriate without it.

### III.   DISCUSSION

#### A.   Plaintiff's Spoliation Motion

Spoliation is defined as "the destruction or the significant and meaningful alternation of evidence." *United States v. E.R.R.*, LLC, No. 19-2340, 2020 WL 4732218 at *3 (E.D. La. Aug. 14, 2020). Spoliation also includes "the failure to preserve property for another's use in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 779 (N.D. Tex. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d, 583, 590 (4th Cir. 2001). A party seeking a spoliation finding must prove three elements: "(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. App'x 565, 574 (5th Cir. 2020). Bad faith requires a "purpose of hiding adverse evidence," *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015), and must be proved with actual "evidence," not "mere allegation[s]," *Hodges v. Mosaic Fertilizer L.L.C.*, 289 Fed. App'x 4, 7 (5th Cir. 2008). "[M]ere negligence is not enough." *Russell v. Univ. of Texas of Permian Basin*, 234 Fed. App'x 195, 208 (5th Cir. 2007).

Here, Plaintiff argues that the BP Defendants had a duty to "[p]reserve (or '[c]reate')" quantitative exposure data by conducting biomonitoring and/or dermal testing of workers responding to the oil spill. R. Doc. 76 at 20. Essentially, he argues that Defendants had a duty to affirmatively collect this data in anticipation of litigation as a result of the oil spill, that not doing

so is tantamount to intentionally destroying relevant evidence, and that BP made the decision not to collect this data in bad faith.

As explained by another section of this Court, this theory of spoliation is "contrary to existing law." *Bland v. BP Expl. & Prod. Inc.*, No. 17-3049, 2022 WL 17155686 (E.D. La. Nov. 22, 2022). Plaintiff cites no authorities for the proposition that a party can have a duty to affirmatively develop evidence in anticipation of litigation, nor does he point to any statute, regulation, case law, or government directive supporting his contention that BP had a duty to conduct biomonitoring. BP's alleged failure to collect data that may or may not have existed is not a failure to preserve evidence or proof of an intention to destroy existing evidence, and as such, by definition, is not spoliation. This principle is well illustrated. For example, in *United States v. Greco*, the court reasoned that "[a] failure to collect evidence that may or may not have been available for collection is very different from the intentional destruction of evidence that constitutes spoliation[,]" rejecting the appellant's argument that the government had essentially spoliated evidence by failing to collect direct data on the amount of losses caused by appellant's participation in a bribery scheme, instead relying on witness testimony. 734 F.3d 441, 447 (6th Cir. 2013). Similarly, in *De Los Santos v. Kroger Tex., LP*, the court reasoned that "[t]he duty to preserve evidence implies a duty not to alter or destroy *existing* evidence," and that therefore it did not constitute spoliation for the defendant to have failed to take witness statements or photograph the areas where the incident had occurred after an alleged slip and fall. 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015) (emphasis original); *see also Bertrand v. Fischer*, No. 09–0076, 2011 WL 6254091, at *4 (W.D. La. Dec.14, 2011) (reasoning that that "spoliation does not encompass a defendant's failure to photograph an accident site . . .. Thus, the absence of after-the-fact photographs . . . cannot support [a] spoliation claim."); *Garcia v. Vitus Energy,*

*L.L.C.*, 600 F. Supp. 3d 975 (D. Alaska 2022) (holding that it was not spoliation for defendant to fail to test its employees for alcohol after an accident). There is no material difference between failing to photograph an accident scene, failing to collect a blood sample from an employee after an accident, and the alleged failure by BP in this case to conduct biomonitoring and dermal testing of response workers.

Other sections of this Court have held the same with regard to functionally identical spoliation motions by B3 plaintiffs. For example, in *Fairley v. BP Expl. & Prod. Inc.*, the court explained that a holding that BP had a duty to create evidence by bringing monitoring data into existence "has no limiting principle but would cause parties and courts to 'go down the bottomless hole' of capturing the next untaken photograph, interviewing the next uninterviewed witness, or testing the next untested person, place or thing, with no idea of where the proposed duty ends." No. 17-3988, 2022 WL 16731817, at *3 (E.D. La. Nov. 3, 2022). Plaintiff's argument that BP 'spoliated' evidence by failing to collect data does not involve existing evidence, but rather concerns evidence that Plaintiff argues could have been created. This is not a cognizable theory of spoliation, and to accept it "would expand the definition of spoliation beyond any reasonably administrable limit." *Fairley*, 2022 WL 16731817, at *3.

Accordingly, Plaintiff's Spoliation Motion is denied.

### B. Defendants' *Daubert* Motion

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. The rule permits experts to offer opinions if (a) the expert's specialized knowledge will help the trier of fact, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied those principles and

methods. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). According to *Daubert*, to evaluate the reliability of the proposed testimony, courts must assess "whether the reasoning or methodology underlying the testimony is scientifically valid." 509 U.S. at 593-94. The Supreme Court has provided a five-factor test for gauging the reliability of an expert's methodology: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275 (5th Cir. 1998), cert. denied, 526 U.S. 1064 (1999) (citing *Daubert*, 509 U.S. at 593-95). The proponent of the expert bears the burden of establishing these criteria. *Moore*, 151 F.3d at 276.

      The Fifth Circuit has outlined exactly the kind of causation evidence experts must present to meet the requirements of Rule 702. This circuit follows "a two-step process in examining the admissibility of causation evidence in toxic tort cases" like this one. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). An expert must first establish general causation and then establish specific causation. *Id.* General causation investigates "whether [the] substance is capable of causing a particular injury or condition in the general population." *Knight*, 482 F.3d at 351. This conclusion requires knowledge of "the harmful level of exposure to a chemical." *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 198-99 (5th Cir. 1996). The Fifth Circuit describes this detail as one of two "minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Id.* at 199; *Seaman v. Seacor Marine, LLC*, 326 F. App'x. 721 (5th Cir. 2009)

(same). "Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence." *Knight*, 482 F.3d at 351. A plaintiff must provide proof that he or she was exposed to quantities known to cause the plaintiff's particular disease. *Allen*, 102 F. 3d at 199. This requirement is the second of the "minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Seaman*, 326 F. App'x. at 723.

Defendants challenge Cook's causation opinions on a number of grounds, including Cook's failure to identify a harmful dose of exposure to specific chemicals capable of causing Plaintiff's alleged health conditions. As eight other sections of this Court have already held, this failure is fatal to Plaintiff's argument that Cook's is admissible evidence of general causation supporting his claims.[1] An expert must identify the harmful level of exposure for each chemical and each condition. *See McIntosh v. BP Expl. & Prod.*, No. 13-1020, 2022 WL 2342480, at *3 (E.D. La. June 29, 2022). Here, Cook "never identifies any particular chemical to which [the plaintiff] was exposed, much less the level of exposure to any such chemical as would be necessary to cause the specific symptoms of which [the plaintiff] complains." *Johns v. BP Expl. & Prod.*, No. 17-3304, 2022 WL 1811088, at *5 (E.D. La. June 2, 2022); *see also Harris v. BP Expl. & Prod.*, No. 17-4342, 2022 WL 2789037, at *9 (E.D. La. July 15, 2022) ("the Court finds that Dr. Cook's opinion is unhelpful because of his inability to link any specific chemical that [the plaintiff] was allegedly exposed to, at the level to which he was exposed, to the conditions that he alleges in his complaint"); *Dawkins*, 2022 WL 2315846, at *9 (Dr. Cook's opinions are

---

[1] *See, e.g.*, *Dawkins v. BP Expl. & Prod.*, No. 17-3533, 2022 WL 2315846 (E.D. La. June 27, 2022) (Vance, J.); *Barkley v. BP Expl. & Prod.*, No. 13-0995, 2022 WL 2342474 (E.D. La. June 29, 2022) (Barbier, J.); *Harrison v. BP Expl. & Prod.*, No. 17-4346, 2022 WL 2390733 (E.D. La. June 30, 2022) (Morgan, J.); *Davis v. BP Expl. & Prod.*, No. 17-4664, 2022 WL 2789027 (E.D. La. July 15, 2022) (Zainey, J.) *Turner v. BP Expl. & Prod.*, No. 17-3225, 2022 WL 2967441, at *5 (E.D. La. July 27, 2022) (Africk, J.); *Reed v. BP Expl. & Prod.*, No. 17-3603, 2022 WL 3099925 (E.D. La. Aug. 4, 2022) (Milazzo, J.); *Blackston v. BP Expl. & Prod.*, No. 17-3048, 2022 WL 5164998 (E.D. La. Sept. 14, 2022) (Guidry, J.); *Hill v. BP Expl. & Prod.*, No. 17-3252, 2022 WL 4534747 (E.D. La. Sept. 28, 2022) (Vitter, J.).

"unhelpful without identifying the specific chemicals and exposure levels capable of causing specific conditions").

In response, Plaintiff points out that the Fifth Circuit has stated that it is not necessary for an expert to establish the "precise level of exposure[.]" *McGill v. BP*, 830 Fed. App'x. 430, 433 (2020), citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 671 (5th Cir. 1999) ("the law does not require Plaintiffs to show the precise level of benzene to which they were exposed."). But the deficiency in Cook's causation opinions is not that he fails to establish a "precise level of exposure" which could have caused Plaintiff's alleged symptoms. Cook's causation opinions fail to link *any* specific chemical that Plaintiff was allegedly exposed to, at *any* level to which he could have exposed, to the conditions that Plaintiff alleges that he suffered as a result of exposure after the oil spill. Accordingly, Cook's causation opinions fail to meet the requirements of Rule 702 for admissible expert causation evidence in a toxic tort case.

Defendants' *Daubert* Motion to exclude Cook's causation opinions is therefore granted.

### C.  Defendants' Motion for Summary Judgment

Finally, Defendants move for summary judgment, arguing that with the exclusion of Cook's causation opinions, Plaintiff lacks any admissible expert evidence of general causation. R. Doc. 80. The Fifth Circuit and other courts handling Deepwater Horizon exposure cases have uniformly concluded that these plaintiffs must submit expert testimony to meet their burden of proving general and specific causation. For example, in *McGill v. BP Expl. & Prod.*, the Fifth Circuit affirmed the district court's summary judgment dismissal of the plaintiff's case after it rejected the plaintiff's causation expert report as "void of any showing [as to] probable exposure level" because, without it, the plaintiff "failed to offer the evidence necessary to prove legal

causation[.]" 830 F. App'x. 430, 434 (5th Cir. 2020); *see also, e.g.*, *Griffin v. BP Expl. & Prod. (In re Deepwater Horizon BELO Cases)*, No. 20-14544, 2022 WL 104243, at *2 (11th Cir. Jan. 11, 2022) ("In a toxic-tort case like this one, a plaintiff must establish both general and specific causation through admissible, reliable expert testimony."). "When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage." *Williams v. BP Expl. & Prod.*, No. 18-9753, 2019 WL 6615504, at *11 (E.D. La. Dec. 5, 2019). Accordingly, where a plaintiff lacks this necessary expert evidence, dismissal at the summary judgment stage is appropriate. With the Court having granted Defendants' *Daubert* motion, Plaintiff lacks any general causation evidence to support his claims.[2] Accordingly, Plaintiff cannot prove an essential element of his claims. Plaintiff's claims must fail, and summary judgment in favor of Defendants is appropriate.

Defendants' Motion for Summary Judgment is thus granted.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Spoliation Motion, R. Doc. 76, is hereby **DENIED**. Defendants' *Daubert* Motion, R. Doc. 79, and Motion for Summary Judgment, R. Doc. 80, are **GRANTED**.

New Orleans, Louisiana, this 20th day of March, 2023.

_____
United States District Judge

---

[2] In opposition to the motion for summary judgment, Plaintiff argues that expert testimony is not needed to establish general causation for transient conditions, and that thus this Court ought not dismiss his claims as to transient conditions even if it excludes Cook's causation opinions. However, this is incorrect. *See Seaman*, 326 F. App'x at 729 ("without admissible expert evidence in this toxic-tort case, [plaintiff] cannot prove causation."); *see also, e.g.*, *Johns*, 2022 WL 1811088, at *3, n. 44 (plaintiffs who characterize their injuries as "transient or temporary" must still produce "expert testimony on general causation combined with specific evidence of the nature of a plaintiff's exposure"); *Bland*, 2022 WL 17155686, at *13.